**Margarita WILLIAMS, Plaintiff,**

v.

**STATE UNIVERSITY OF NEW YORK, and State University Health Center at Brooklyn a/k/a S.U.N.Y. Downstate Medical Center a/k/a State University Hospital, Defendants.**

No. 86 CV 985.

United States District Court, E.D. New York.

May 15, 1986.

Steven Wildstein, New York City, for plaintiff.

Robert Abrams, Atty. Gen., State of N.Y., New York City by Charles F. Sanders, Asst. Atty. Gen., for defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

### NATURE OF THE CASE

This case arises under the nineteenth-century civil rights statutes, codified at 42 U.S.C. §§ 1981 and 1983 (1982), which were

enacted to enforce the guarantees of the Thirteenth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) (1982).

The Costa Rican born plaintiff, Margarita Williams (Williams), is a black Hispanic woman currently residing in Brooklyn, New York. She is a registered nurse and was awarded a master's degree in community health administration in 1974. From April 4, 1980 until April 2, 1986 she was employed as the associate director of nursing at the State University of New York Downstate Medical Center (the Hospital). She brings this lawsuit against her former employer on the grounds that her discharge was an act of intentional discrimination based on her color, sex and national origin.

Plaintiff primarily seeks equitable relief. The complaint requests both a preliminary and permanent injunction compelling defendants to reinstate her to her former job and grant her employment tenure and enjoining defendants from refusing to do so solely because of her race, color and national origin. The case is currently before the Court on plaintiff's application for a preliminary injunction.

## BACKGROUND

A recitation of the factual and procedural history of this case is warranted because they factor heavily in the Court's decision on plaintiff's application.

### A. *The Facts of the Case*

Plaintiff was initially hired as the associate director of nursing for staffing at the Hospital in April 1980. Her managerial responsibilities included supervising the staffing of 800 nurses and hospital attendants, directing the "float staff," conducting certain training activities and performing labor relations liaison work. Pl's Aff. at ¶ 2.

Plaintiff was hired for a term appointment pursuant to Article XI, Section D, of the Policies of the Board of Trustees of the State University of New York (the Policies). A term appointment is one "for a specified period of not more than three years which shall automatically expire at the end of that period unless terminated earlier because of resignation, retirement, or termination."[1] Goldwasser Aff. at ¶ 5 (quoting Section D(1) of the Policies). A term appointment, of itself, shall not be "deemed to create any manner of legal right, interest or expectancy in any other appointment or renewal." *Id.* at ¶ 6 (quoting Title D, Section (4), of the Policies).

For the first three years of her employment Williams received favorable job evaluations. Then, commencing in January 1983, plaintiff's white supervisor allegedly began to criticize plaintiff's performance and undermine her authority. Pl's Aff. at ¶ 5.

In April 1984 plaintiff applied for the newly created position of deputy director of nursing. Her application, according to Williams, was utterly ignored—the Hospital failed to even acknowledge receipt of her papers. On the heels of this incident plaintiff states that her supervisor subjected her to increased harassment and a second negative performance evaluation. *Id.* at ¶ 13.

Plaintiff asserts that she requested that the Committee on Professional Evaluation review the unsatisfactory report according to guidelines established in a "Memorandum of Understanding Between S.U.N.Y. and United University Professions Relating to a System of Evaluation for Professional Employees." The Committee met in response to plaintiff's request, but a quorum was not present, nor were any third parties called and questioned to substantiate the unfavorable evaluation. In plaintiff's words the session merely applied a "rubber stamp" to her supervisor's report. *Id.* at ¶¶ 19–20.

On January 18, 1985 the Hospital president informed Williams that her employ-

---

**1.** None of the affidavits submitted indicate when plaintiff received the appointment which expired on April 2, 1986. The Court assumes that it was on or about April 2, 1983.

ment would be terminated on April 2, 1986. Three months later Williams filed a racial discrimination in employment complaint with the New York State Division of Human Rights. That agency failed to undertake an investigation and ultimately surrendered its jurisdiction to the EEOC, before which the complaint is presently pending. Plaintiff did not seek judicial intervention until April 1986, purportedly because her union representative lulled her into the belief that the matter would be resolved amicably and that she would not be discharged. Pl's Reply Mem. at 3.

### B. *Procedural Posture*

This case arrived on the Court's doorstep on the eve of plaintiff's job termination. Plaintiff attempted to obtain a temporary restraining order enjoining her termination without giving notice to the defendants. The Court refused to grant this drastic relief and instead set the matter down for argument on April 4, 1986.

■ On that date the Court learned that plaintiff had failed to file a complaint. Rule 3 of the Federal Rules of Civil Procedure clearly and succinctly indicates that "a civil action is commenced by filing a complaint with the court." Prior to the filing of a complaint a court lacks subject matter jurisdiction and is powerless to grant preliminary injunctive relief. *See, e.g., Stewart v. United States Immigration and Naturalization Service,* 762 F.2d 193, 198 (2d Cir.1985).

Plaintiff rectified this deficiency by serving and filing a verified complaint with the Clerk of the Court on April 8, 1986. The complaint sought "relief for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982)." It did not seek any relief under Section 1981 and 1983 of Title 42.

The parties reconvened before the Court on April 11, 1986, at which time the defendants submitted a memorandum in support

of a motion to dismiss for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). The basis for the motion was plaintiff's failure to exhaust her administrative remedies by first filing charges with the EEOC and receiving a right to sue letter. Completion of these administrative steps are statutory prerequisites to suit under Title VII. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); *Movement For Opportunity and Equality v. General Motors Corp.,* 622 F.2d 1235 (7th Cir.1980).

■ The plaintiff simultaneously provided the Court with an amended complaint alleging violations of 42 U.S.C. §§ 1981 and 1983 and the Fourteenth Amendment to the Constitution in addition to the violations of 42 U.S.C. § 2000e. Although the section 1981 and 1983 safeguards overlap the protective parameters of Title VII, they do not require preliminary exhaustion of administrative remedies before suit. *See, e.g., Gooding v. Warner-Lambert Co.,* 744 F.2d 354 (3d Cir.1984) (Title VII's administrative machinery not prerequisite for maintaining § 1981 suit); *Smith v. New York City Transit Authority,* 535 F.Supp. 1114 (E.D. N.Y.1982) (no administrative prerequisites in § 1983 action).

Subsequently, on April 29, 1986 the Court received a letter from defendants reporting that the motion to dismiss had been withdrawn. Thus, the case is presently an action for employment discrimination in violation of 42 U.S.C. § 1981 and 1983.[2] The Court now considers the merits of plaintiff's application for a preliminary injunction.

### DISCUSSION

### A. *The Preliminary Injunction Standard*

The law in the Second Circuit governing the granting of a preliminary injunction is now well settled. Since 1976 to successful-

---

2. By virtue of these claims the Court has jurisdiction to consider the preliminary injunction application. The Court notes that the Title VII claim is still premature. Absent a motion by

the defendants to dismiss this claim it remains in the complaint, but the Court will not consider it further in this opinion.

ly seek a preliminary injunction in this Circuit a moving party must show (1) irreparable harm *and* (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping in movant's favor. *See Power Test Petroleum Distributors v. Calcu Gas,* 754 F.2d 91, 95 (2d Cir.1985); *Gemini Supply Corp. v. Zeitlin,* 590 F.Supp. 153, 155–56 (E.D.N.Y. 1984).

Both plaintiff's and defendants' exposition of the law on this issue is outdated. Plaintiff cites *Gresham v. Chambers,* 501 F.2d 687, 691 (2d Cir.1974), and defendants cite a 1974 decision of this Court[3] for the proposition that a preliminary injunction will issue upon a showing of *either* (1) probable success on the merits and possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *See* Pl's Supp. Mem. at 3 and 8; Defs' Mem. at 5, Defs' Supp. Mem. at 6–7.

The Court notes that two years after the *Gresham* decision the Second Circuit instituted a slight semantic change in the standard with substantial legal significance. In *Triebwasser & Katz v. American Telephone & Telegraph Co.,* 535 F.2d 1356, 1359 (2d Cir.1976), the Court of Appeals for the Second Circuit acknowledged that irreparable harm is "a fundamental and traditional requirement of all preliminary injunctive relief," citing *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975). Reasoning that if a showing of irreparable harm is required where a plaintiff must also establish probable success on the merits, "then *a fortiori* where the plaintiff establishes something less than probable success as to the merits, need for proof of the threat of irreparable damage is even more pronounced. In sum the balancing of hardships test ... necessarily includes the showing of irreparable harm." 535 F.2d at 1359.

### B. *Irreparable Harm*

Satisfying this test is critical to plaintiff's application and consequently warrants clear and careful scrutiny by the Court. In her affidavit plaintiff sets forth her reasons why she will suffer irreparable harm if she is not reinstated. She states that (1) her career will be destroyed because no one will hire her for a *comparable position* after being discharged and suing her employer; (2) her employment position was *unique* in view of all her responsibilities; and (3) she is a self-supporting widow with mortgage payments and a daughter's college education to finance. *See* Pl's Aff. at ¶ 35 (emphasis added).

Little doubt exists in the mind of this Court that Williams may indeed suffer some anguish and some economic hardship during the course of this litigation. Nevertheless, sympathy for plaintiffs has no place in the application of the Second Circuit's standard to the facts of a case. The sole issue confronting this Court and requiring its decision is whether the plaintiff's circumstances are such that a refusal to issue a preliminary injunction in her favor will wreak irreparable harm upon her.

▮ In an employment discharge case "the requisite irreparable harm is not established ... by financial distress or inability to find other employment, unless truly extraordinary circumstances are shown." *Holt v. Continental Group, Inc.,* 708 F.2d 87, 90–91 (2d Cir.1983), *cert. denied,* 465 U.S. 1030, 104 S.Ct. 1294, 79 L.Ed.2d 695 (1984) (citing *Sampson v. Murray,* 415 U.S. 61, 91–92 & n. 68, 94 S.Ct. 937, 953 & n. 68, 39 L.Ed.2d 166 (1974)). " 'Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough' to justify injunctive relief." *Stewart v. United States I.N.S.,* 762 F.2d at 199 (citation omitted). Nor will damage to reputation and self esteem, or hardship imposed on a

---

3. *Moore v. Kibbee,* 381 F.Supp. 834, 837 (E.D. N.Y.1974).

plaintiff's family alone or in combination merit a preliminary injunction. *Id.* at 200. In all cases where a plaintiff, if successful in obtaining a permanent injunction, could calculate the interim damages with sufficient accuracy to make damages an adequate substitute, no preliminary injunction ought to issue. *Loveridge v. Pendleton Woolen Mills, Inc.*, 788 F.2d 914, 917–18 (2d Cir.1986); *Ives Laboratories, Inc. v. Darby Drug Co., Inc.*, 601 F.2d 631, 644 (2d Cir.1979).

■ Culling the factors from cases on point which have been deemed to constitute "extraordinary circumstances," this Court concludes that a discharged plaintiff must show that she (1) has very little chance of securing further employment; (2) has no personal or family resources at her disposal; (3) lacks private unemployment insurance; (4) is unable to obtain a privately financed loan; (5) is ineligible for any type of public support or relief, *see Aguilar v. Baine Service Systems, Inc.*, 538 F.Supp. 581 (S.D.N.Y. 1982), and (6) any other compelling circumstances which weigh heavily in favor of granting interim equitable relief. In essence the plaintiff must quite literally find herself being forced into the streets or facing the spectre of bankruptcy before a court can enter a finding of irreparable harm.

■ In the instant action plaintiff has failed to document her efforts to find interim employment beyond a passing reference in her supplemental affidavit. Pl's Supp. Aff. at ¶ 7 ("It will be impossible for me to find a comparable hospital managerial position .... I have not met with any fortune in this respect so far.") The Court notes that plaintiff may have to seek any employment for which she is qualified, *i.e.*, as a registered nurse, rather than an identical position to the one she lost. Nor, to the Court's knowledge, has she tried to collect either private or public unemployment insurance. Furthermore, plaintiff has presented no evidence of any attempts to obtain an extension of her mortgage payments, nor of her daughter's efforts to apply for emergency financial aid or a sum-mer job. Consequently, this Court may not in good conscience find the extraordinary circumstances necessary to a determination of irreparable harm.

■ One additional facet of this issue to consider before turning to the second prong of the injunction standard is whether plaintiff's discharge was retaliatory. From the face of the complaint this does not appear to be a retaliatory discharge case. However, plaintiff's memorandum and her affidavit contain descriptions of several incidents with her supervisor which could be construed as supporting such a claim. In the event the complaint is amended, yet again, to contain such allegations this Court responds to the issue in advance.

The Second Circuit has recognized that inherent in a retaliatory discharge case is "the distinct risk that other employees may be deterred from protecting their rights under the Act or from providing testimony for the plaintiff in her effort to protect her own rights ... [and this] may be found to constitute irreparable injury." *Holt,* 708 F.2d at 91. The Second Circuit has not, however, endorsed the notion that "irreparable harm sufficient to warrant a preliminary injunction exists in every retaliation case." *Id.* The *Holt* court has required the district courts to make an explicit determination in each instance as to whether the potential chilling effect constitutes a risk of irreparable harm.

This Court feels that in the case at bar no such chilling effect has been shown. Plaintiff has not asserted that other employees were similarly treated and harassed nor has she suggested that witnesses have been deterred from testifying on her behalf. In point of fact, Williams offers no corroborating affidavits at all nor does she offer to explain the reason for her unsupported allegations.

C. *Likelihood of Success on the Merits*

1. *Section 1981*

■ The enforcement provisions of § 1981 reach only acts of purposeful discrimination. *See, e.g., General Building*

*Contractors Association v. Pennsylvania,* 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982); *Fain v. District of Columbia,* 568 F.Supp. 799, 803 (D.D.C. 1983). To prevail on the merits a plaintiff must prove discriminatory intent and not merely disparate impact, although the latter may be used as one form of evidence presented to show purposeful discrimination. *Firefighters Local Union No. 1784 v. Stotts,* 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984).

A plaintiff's prima facie case may be established by satisfying the four-part test, or a variation thereof, set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A plaintiff must demonstrate (1) that she belongs to a racial minority; (2) that she applied and was qualified for a job for which the employer was seeking applicants or—in a termination situation—that she was currently a qualified employee; (3) that despite her qualifications she was rejected or terminated, and (4)—in an applicant case—that the position remained open and the employer continued to seek people of like or lesser qualifications, or that the terminated plaintiff was replaced by a non-racial minority candidate of equal or lesser qualifications.

If plaintiff makes out a prima facie case the defendant then shoulders the burden of showing a legitimate nondiscriminatory reason for its actions. The ultimate burden of persuasion then returns to the plaintiff to prove that the defendant's reason is pretextual. *Id.*

Here, plaintiff has shown to the Court's satisfaction that she is a member of a racial minority, that she applied for the deputy director of nursing position for which she allegedly was qualified and that she was qualified for her position as associate director of nursing, that her application was rejected, and that she was ultimately discharged from her job. What plaintiff has failed to allege in her complaint or in her affidavits is the fourth element of the test—that her employer continued to seek persons with similar qualifications or that she was replaced as associate director of

nursing by a non-minority individual. The Court harbors doubts, therefore, as to whether plaintiff has even a prima facie case.

In their affidavits and memoranda the defendants have advanced their reason for plaintiff's termination, although they do not specifically address their rejection of plaintiff's application for the position of deputy director of nursing. According to defendants the plaintiff was hired for a term appointment pursuant to New York State Codes, Rules, and Regulations, Chapter V, Parts 335 and 338. She was untenured and had no vested right to continued employment at the Hospital. This arrangement coupled with her unsatisfactory work performance evaluations suggest a legitimate nondiscriminatory reason for termination. Whether plaintiff could show that this reason was a mere pretext to mask the defendants' invidious discrimination is difficult for the Court to predict with certainty. Suffice to say, however, we do not believe that plaintiff enjoys a probability of success on the merits.

*2. Section 1983*

 To state a cause of action under Section 1983 a complaint must contain two critical allegations: (1) deprivation of a federal right (2) by a "person" acting "under color of state law." The word "person" in the statute has been construed broadly and includes cities, counties and other local government entities. *See* R. Richey, *Manual on Employment Discrimination Law and Civil Rights Actions in the Federal Courts,* p. D2–2 (rev. ed. 1984), and cases cited therein. However, a State is not a proper defendant to a § 1983 action, *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), absent an express waiver of its sovereign immunity, *Florida Dep't of Health and Rehabilitation Services v. Florida Nursing Home Ass'n,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), or in cases where

prospective injunctive relief is sought, *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Similarly this immunity bars suits against State agencies or any "arm" of the State. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); *Florida Dep't of Health and Rehabilitation Services, supra,* 450 U.S. 147, 101 S.Ct. 132. Therefore, as the complaint now reads,[4] plaintiff has little likelihood of succeeding on the merits of her § 1983 claim because the defendants appear to be protected from suit by the Eleventh Amendment.[5]

### D. Sufficiently Serious Questions Going To The Merits

■ Although unable to conclude that plaintiff has evinced a likelihood of success on the merits, the Court is more willing to acknowledge that plaintiff's papers may pose sufficiently serious questions going to the merits to satisfy the first part of the alternative second prong of the preliminary injunction standard. If supported at trial, plaintiff's allegations (or amended allegations) could lead a finder of fact to decide that Williams was treated differently from her peers and that this treatment was at least partially attributable to her race, sex or national origin. The underlying discrim-

inatory intent need not be the sole or even the dominant factor behind the decision to terminate the plaintiff. "It is sufficient for it to be a motivating factor." *Little v. United States,* 489 F.Supp. 1012, 1023 (D. Ill.1980) (citing *Arlington Heights v. Metropolitan Housing Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977) ).

### E. The Balance of Hardships

■ Each side argues vigorously that an adverse decision will weigh more heavily against it. Plaintiff reiterates those reasons listed in her claim of irreparable harm. *See supra* pp. 1247–1248. Defendants assert that allowing reinstatement would (1) unequivocally change the *status quo* and provide plaintiff with relief beyond the extent contemplated by Fed.R.Civ.P. 65; (2) undermine the decision-making capacity of the administrators at the Hospital; (3) destroy confidence in the administration and the rules and regulations that guide personnel, and (4) would give rise to a flood of litigation by any and all parties discharged by the defendants. Def's Supp. Mem. at 17–18.

This Court does not believe that the hardships resulting to either party from an adverse decision would be intolerable. Nevertheless, the Court maintains its posi-

---

**4.** Plaintiff might be more successful if she were to name certain State officials as defendants because while "neither the state nor its agencies may be sued for injunctive relief in federal court ... injunctive or prospective relief may be sought against state officials without invoking the eleventh amendment bar." *Sessions v. Rusk State Hospital,* 648 F.2d 1066, 1069 (5th Cir. 1981).

**5.** Whether the Eleventh Amendment also bars a § 1981 suit against a State is a less settled question, never having been specifically addressed by the Supreme Court. In this authoritative void the lower courts have adopted divers approaches. Some have extended the rationale of *Quern v. Jordan, supra,* and *Edelman v. Jordan, supra,* and upheld the State's immunity, *e.g., Rucker v. Higher Educational Aids Board,* 669 F.2d 1179, 1184 (7th Cir.1982); *Sessions v. Rusk State Hospital,* 648 F.2d 1066, 1069 (5th Cir. 1981).

Other courts have, *sub silentio,* permitted a § 1981 action to proceed against an arm of the

State—in conjunction with a Title VII claim— *e.g., Whiting v. Jackson State University,* 616 F.2d 116 (5th Cir.1980); *Kirkland v. New York State Dep't of Correctional Services,* 520 F.2d 420 (2d Cir.1975).

The issue was recently examined in a scholarly opinion by District Court Judge McCurn. *Daisernia v. The State of New York,* 582 F.Supp. 792, 799–803 (N.D.N.Y.1984). Interpreting § 1981 in light of the *Quern* decision and the Supreme Court's recent pronouncement in *Pennhurst State School and Hospital,* 104 S.Ct. at 907, that "an unequivocal expression of congressional intent" is required to override State immunity, the district court concluded that the high Court would not "find an intent to abrogate state immunity in a statute of general applicability that was enacted in an era when a restrictive view of federal power prevailed." *Daisernia,* 582 F.Supp. at 802. This Court concurs with Judge McCurn's conclusion that a State's sovereign immunity bars an action against it under § 1981.

tion enunciated over a decade ago, that "of all fields which the federal courts should hesitate to invade and take over, education and faculty appointments at a University level are probably the least suited for federal intervention." *Moore v. Kibbee,* 381 F.Supp. 834, 839 (E.D.N.Y.1974) (citation omitted). Plaintiff's former position as associate director of nursing in the State University system is within the parameters of this principle.

## CONCLUSION

The plaintiff has failed to establish to this Court's satisfaction either irreparable harm—a prerequisite to preliminary injunctive relief—or likelihood of success on the merits. Although plaintiff's papers do suggest the existence of a cognizable claim, though perhaps not against the named defendants, this Court is also unable to conclude that the balance of hardships tips decidedly in her favor. For the reasons fully elaborated herein, the Court hereby denies plaintiff's application for injunctive relief.

SO ORDERED.