Robert G. **WALSH**, George A. Graefe and George Demarest, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**NORTHROP GRUMMAN CORPORATION**, Grumman Corporation, Renso Caporali, Howard J. Dunn, Jr., Robert Denien and Robert E. Foster, Defendants.

No. 94–CV–5105 (TCP).

United States District Court, E.D. New York.

Dec. 8, 1994.

Steven P. Hoffman (Karl Stoecker, D. Brian Hufford, of counsel), Pomerantz, Haudek Block & Grossman, New York City, for plaintiffs Robert G. Walsh, George A. Graefe and George Demarest and others similarly situated.

John A. Herfort (Edward Ferguson, III, of counsel), Gibson, Dunn & Crutcher, New York City, for defendants Northrop Grumman Corp., Grumman Corp. and Renso Caporali.

Eric M. Nelson (Alan J. Sorkowitz, Alan J. Freedman, of counsel) Whitman Breed Abbot & Morgan, New York City, for defendants Howard K. Dunn, Jr., Robert Denien and Robert E. Foster.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

By an order to show cause dated November 3, 1994, plaintiffs seek a preliminary injunction to stay a deadline imposed by defendants, (plaintiffs' present employers) by which plaintiffs must decide whether or not to retire from the company under the terms of a disputed employee severance pay plan.

On December 8, 1994, plaintiffs must choose whether they will resign voluntarily or remain in their jobs and face possible termination early in the New Year.

Although plaintiffs have indicated a likelihood of success on the merits of their claims, they have not shown that irreparable harm will result if the deadline is not stayed.

Accordingly, their motion for a preliminary injunction must be and is hereby denied. Furthermore, plaintiffs' motion for summary judgment and defendants' motions to dismiss the complaint are denied without prejudice to renew.

### FACTS

On May 18, 1994, Grumman Corporation merged with Northrop Corporation following a tender offer and months of negotiations between Grumman and Northrop and a com-

peting offeror, Martin Marietta. As a result of the merger, over ninety percent of the outstanding shares of Grumman were tendered to Northrop, and Grumman became a wholly-owned subsidiary of Northrop. The name of the company was then changed to Northrop Grumman.

Prior to the merger Grumman employees were entitled to participate in an Employee Investment Plan ("EIP") and a Severance Payment Plan ("SPP"). The EIP held approximately one-third of Grumman's outstanding stock. Additionally, numerous employees owned outright between seven and seventeen percent of Grumman stock. The SPP, on the other hand, entitled the employees to one week's pay for every year that they had worked for the company. During the relevant time period, both before and after Northrop's and Martin Marietta's tender offers, the SPP provided for extensions of benefits in the event that control of Grumman changed hands. The differences between these provisions are what form the basis of this action.

On January 18, 1990, Grumman's Board of Directors authorized the company to revise the SPP to state:

> [I]n the event of a change in control of this Corporation any employee whose employment . . . is terminated within 30 months following such change of control . . . shall be entitled to severance benefits no less extensive and of no less value than those applicable to such employee immediately preceding the change of control.

Grumman thereafter amended its SPP, to be effective January 1, 1993, providing that the "severance pay policy would continue for 30 months following a change in control only in the event of a *hostile* change in control." (emphasis added). Plaintiffs allege that this change was made contemporaneously with Grumman's attempts to find a buyer and for the purpose of marketing the company as a more attractive purchase.

Following Grumman's acceptance of the Northrop tender offer, on September 1, 1994 Grumman terminated the SPP to be effective January 1, 1995. Grumman announced that employees who wished to receive the existing plan's benefits must voluntarily resign from the company by December 8, 1994. At that time Grumman also announced that a new severance pay policy would go into effect, a policy consistent with Northrop's and, as defendants admit, considerably less generous than Grumman's SPP. According to deposition testimony of representatives of both plaintiffs and defendants, it was generally understood that a merger would ultimately lead to layoffs.

The Trustees of the EIP, Messrs. Dunn, Denien and Foster were also senior executives of Grumman. Plaintiffs allege, and defendants do not dispute, that together with other Grumman officers, the Trustees stood to gain from generous Special Severance Agreements, commonly known as "golden parachutes," if the merger was successful. At the same time, it is undisputed that the Trustees, and other officers including Mr. Caporali, Grumman's Chief Executive and Chairman of the Board of Directors, were aware that the SPP had been amended by the Board to include the hostile takeover limitation.

During negotiations with the competing bidders, Grumman's Board of Directors issued to shareholders who owned stock in Grumman outright and filed with the Securities and Exchange Commission a Solicitation/Recommendation Statement (a "Schedule 14D–9") and annexed to it an Information Statement. Therein, the SPP was described as follows:

> In January 1990, the Board of Directors authorized the Corporation to provide that in the event of a "Change in Control," any employee whose employment is involuntarily terminated within 30 months following such "Change in Control" shall be entitled to receive the Corporation's severance pay benefits in effect immediately prior to the "Change in Control."

Apparently, the same description was contained in Grumman's March 1993 Proxy Statement issued to all shareholders—including those who only held stock under the EIP—at the 1993 annual meeting. Plaintiffs contend that this language notified them that the 1990 plan, exclusive of a hostile takeover limitation, would be effective in the event of

any change in control of Grumman. Plaintiffs also claim that the absence of any notification of the 1993 amendments in the materials filed with the SEC constitutes material misrepresentations in violation of the Securities and Exchange Act of 1934.

In April prior to the merger and armed with Northrop's attractive bid of $62 per share, the Trustees informed the EIP participants that, pursuant to their powers and the terms of the EIP, they had decided to tender all of the Grumman stock in the EIP to Northrop. Defendants contend that this decision was made after seeking an opinion from an "independent investment advisor." The parties dispute the role of this advisor, Rothschild & Co., and whether procuring its involvement and acting upon its advice satisfied the Trustees' duties under ERISA. Plaintiffs contend that Rothschild determined only that the merger was fair from "a financial point of view," thus falling short of the role of independent advisor contemplated by ERISA. Defendants argue that Rothschild fulfilled this role and, and in addition to the financial considerations, found that the tender offer "represents adequate consideration to the Plan."

Based on the facts presented thus far, it appears to the Court that while the then management Trustees may have been aware of the January 1993 amendments, they had, by virtue of their "golden parachutes" and their personal ownership of a substantial amount of Grumman shares, conflicts of interest. Therefore, they were required to be aware of the admonishment of this Court and the Second Circuit in the *Donovan v. Bierwirth* case so as to know, *inter alia*, that a thorough independent investigation was necessary.

### DISCUSSION

■ Plaintiffs' motion for a preliminary injunction must be denied because plaintiffs have not established that the possibility, or even actuality, of being terminated from their jobs constitutes irreparable harm. It is axiomatic that in order to obtain a preliminary injunction, the movant must establish that a) irreparable harm will result otherwise, and b) either 1) there is a substantial likelihood of success on the merits or 2) a preliminary injunction is appropriate after considering the balance of the hardships on the parties. *Jackson Dairy Inc. v. H.P. Hood & Sons,* 596 F.2d 70, 72 (2d Cir.1979); *JSG Trading Corp. v. Tray–Wrap, Inc,* 917 F.2d 75, 79 (2d Cir.1990); *Microsoft Corp. v. Harmony Computers & Electronics, Inc.,* 846 F.Supp. 208, 210 (E.D.N.Y.1994). For purposes of a preliminary injunction, the movant must provide evidence of damages that can not be rectified by financial compensation. *Loveridge v. Pendleton Woolen Mills, Inc.,* 788 F.2d 914, 917 (2d Cir.1986).

Plaintiffs contend that they will be irreparably harmed by the consequences of the December 8, 1994 deadline. Indeed, many of the plaintiffs who have worked for Grumman for decades and who are near retirement age, are now in the unenviable position of being required to choose between early retirement under a plan with diminished benefits, or to stay with Northrop Grumman and face possible termination in early 1995. Thus, the ultimate harm that plaintiffs are attempting to avoid here is losing their jobs at Northrop Grumman.

■ In this Circuit, however, it is established that dismissal from employment does not constitute irreparable harm. *Savage v. Gorski,* 850 F.2d 64, 68 (2d Cir.1988) (holding that dismissed employee can be made whole by reinstatement and money damages); *Williams v. State University of New York,* 635 F.Supp. 1243 (E.D.N.Y.1986) (irreparable harm did not exist where a dismissed employee failed to show that extraordinary circumstances would result, such as personal bankruptcy, if stay was not granted). As this Court has stated before,

> [l]ittle doubt exists in the mind of this Court that [plaintiffs] may indeed suffer some anguish and some economic hardship in the course of this litigation. Nevertheless, sympathy for plaintiffs has no place in the application of the Second Circuit's standard to the facts of this case. The sole issue confronting this Court ... is whether the plaintiffs['] circumstances are such that a refusal to issue a preliminary injunction

in [their] favor will wreak irreparable harm upon [them].

*Williams,* 635 F.Supp. at 1247.

 Plaintiffs urge this Court to consider the irreparable injury to be that plaintiffs are being coerced into "voluntarily" resigning, not being "dismissed" from their jobs. How the analysis would change, however, is neither clarified by plaintiffs, nor apparent to this Court; the test is whether plaintiffs could be made whole by reinstatement and/or money damages, and both options could be available to plaintiffs should they prevail in this case. Furthermore, it is undisputed that the employee shareholders who held stock in Grumman directly and who were participants in the EIP, benefited from the merger which resulted in a premium over the Grumman trading price the day before the tender offer began. Thus, even if this Court were to consider plaintiffs' arguments that the irreparable injury was that employees are being coerced into 'voluntarily' resigning and that many face the very real possibility of termination, this Court would also take into consideration that many of these plaintiffs benefited financially from the tender offer. Thus, it can not be determined at this time either that plaintiffs would be irreparably harmed or to what extent they will have suffered a compensable injury as a result of the merger. Ultimately, however, plaintiffs have not established that the alleged harm cannot be remedied by money damages, therefore they have failed to meet the requirements of a preliminary injunction.

Although a preliminary injunction is not appropriate under the facts presented to the Court at this juncture, plaintiffs have sufficiently stated claims for relief, and defendants' motions to dismiss must be denied. In particular, plaintiffs have made persuasive allegations that the conduct of the Trustee and corporate defendants may constitute serious violations of the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. § 1001, *et seq.* As discussed below, however, many issues of material fact remain which also precludes summary judgment at this time.

 Plaintiffs allege that the Trustee defendants violated their fiduciary duties under ERISA. Congress has mandated that an ERISA trustee administer the plan solely in the interest of the participants and beneficiaries and discharge their duties "with the care, skill, prudence and diligence" that a prudent person would use under the circumstances. 29 U.S.C. § 1104(a)(1)(B) (1985); *see also, Morse v. Stanley,* 732 F.2d 1139, 1144–45 (2d Cir.1984). "This charge imposes an unwavering duty on an ERISA trustee to make decisions with single-minded devotion to a plan's participants and beneficiaries." *Morse,* 732 F.2d at 1145. In light of the allegations that the Trustee defendants received between $713,764.00 and $1,478,912.00 each for the tender of their shares of restricted stock in Grumman, they not only had substantial fiduciary duties to uphold, but also should have acted affirmatively to deflect the foreseeable criticism that they acted primarily in their self interest.

 This is not to say that the Trustees, who were also officers of the corporation, were *per se* disqualified from making objective investment decisions on behalf of the Plan. As would be applicable to a common law trustee, ERISA trustees have dual loyalties; an ERISA trustee must make an "independent investigation into the basis for an investment decision which presents a potential conflict of interests," an investigation which is both intensive and scrupulous. *Donovan v. Bierwirth,* 538 F.Supp. 463, 470 (E.D.N.Y.1981), *aff'd,* 680 F.2d 263 (2d Cir. 1982). This duty must be discharged with the greatest of care. *Donovan,* 538 F.Supp. at 470.

 In the event of an unavoidable conflict of interest, the Trustees had (and in light of *Donovan, supra,* should have been fully cognizant of) other options which they should have considered in order to undertake the requisite independent investigation. Upon the facts presented to this Court it is very doubtful whether the Trustees' reliance on the Rothschild opinion would even start to satisfy the strict fiduciary duties under ERISA. On the other hand, as plaintiffs suggest, the Trustees should have not only inquired among themselves as to the impact of the merger on employees, but also should

have investigated and computed carefully the financial impact on the beneficiaries. Alternatively, they should have appointed an independent trustee, hired an ERISA expert, passed through to the beneficiaries the vote on the tender offer, made some attempt to meet with plan participants to present the facts of the tender offer or even resigned and had a court appoint an independent trustee. *See, e.g. Donovan*, 680 F.2d at 272; *Danaher Corp. v. Chicago Pneumatic Tool Co.*, 635 F.Supp. 246, 350 (S.D.N.Y.1986). It is quite clear that nothing of this sort was ever undertaken by defendants. Moreover, this Court may not ignore the fact that of all the parties to be involved in a dispute of this nature and to be facing these allegations, the Grumman Trustees should be afforded the least amount of leeway when it comes to ensuring that as Trustees they should have made an independent investigation. *See Donovan*, 680 F.2d at 273 ("The [Grumman] trustees also failed to measure up to the standard required of them to do a more thorough job in ... investigating whether anything could be done to protect the Grumman pension fund in the event of an acquisition of Grumman by LTV.")

Moreover, this Court notes that under the present facts there is a valid issue of whether the Grumman Board of Directors violated ERISA when modifying the Employee Severance Plan in 1992. "[U]nder ERISA, the employer has the right at any time to amend or terminate a severance pay plan." *Reichelt v. Emhart Corp.*, 921 F.2d 425, 430 (2d Cir.1990) *cert. denied*, 501 U.S. 1231, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991). A primary purpose behind ERISA section 402(b)(3), which sets the standards by which an employee benefit plan may be amended or modified, illustrates that one of ERISA's goals "is to ensure that all interested parties will know how a plan may be altered...." *Schoonejongen v. Curtiss–Wright Corp.*, 18 F.3d 1034, 1038 (3rd Cir.), *cert. granted*, —— U.S. ——, 115 S.Ct. 42, 129 L.Ed.2d 937 (1994). For instance, a plan subject to ERISA "shall 'provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan.' " *Sigmund Cohn Corp. v. District No. 15 Machinists Pension Fund*, 804 F.Supp.

490, 494 (E.D.N.Y.1992) (quoting, 29 U.S.C. § 1102(b)(3)) (amendments made in contravention to pension plan's procedures deemed invalid). Thus, after an amendment is made, it should be in writing because while it "may be necessary for employees to understand their rights vis-a-vis the new term, it is also important that employees understand how their rights may be modified in the future; ..." *Schoonejongen*, 18 F.3d at 1039 n. 4.

The emphasis on written amendments underscores the more general ERISA policy that modifications to ERISA must not be hidden from the employees who may be affected by the amendments. It may not be disputed that employees should at all times know the limitations of their rights and benefits under the plan. ERISA requires that a description of the plan itself " 'be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations' " under the plan. *Morse*, 732 F.2d at 1147 (quoting, 29 U.S.C. § 1022(a)(1)). This rule, coupled with the high degree of fiduciary responsibility that is expected of persons who serve as ERISA trustees, *see, e.g., Donovan*, 680 F.2d at 271, supports plaintiffs' contention that they were misled into believing that their severance benefits would continue in the event of a friendly takeover.

Therefore, while extraordinary relief is not warranted at this time, plaintiffs have stated potentially meritorious claims for relief. If, as plaintiffs contend, the Grumman Trustees failed to directly notify the beneficiaries of the amendments and the Grumman Board distributed a Proxy Statement which did not reflect the modifications and filed Solicitation/Recommendation Statements with the SEC which were devoid of any indication that the plan had been so modified, plaintiffs may be well on their way to making a strong case that ERISA has been violated and the Trustees failed to meet their duties as fiduciaries.

### CONCLUSION

In view of their inability to demonstrate irreparable injury, plaintiffs motion for a preliminary injunction must be and is hereby denied. Plaintiffs' motion for summary judg-

ment and defendants' motions to dismiss the amended complaint are denied without prejudice to renew.

SO ORDERED.