Edward S. KULESZA, et al., Plaintiffs,

v.

NEW YORK UNIVERSITY MEDICAL CENTER, a Division of New York University, Defendant.

No. 99 Civ. 11679(DC).

United States District Court, S.D. New York.

Jan. 23, 2001.

268

York University Medical Center ("NYU") provided medical services at Goldwater Memorial Hospital ("Goldwater Hospital") until June 30, 1997. At that time, the affiliation agreement expired, and HHC entered into a new affiliation agreement with Roosevelt Island Medical Associates ("Roosevelt"). Plaintiffs, seventeen physicians employed by NYU to practice at Goldwater, were discharged by NYU on June 30, 1997. The next day, July 1, 1997, plaintiffs began working for Roosevelt as physicians at Goldwater Hospital.

Shortly before plaintiffs were laid off, NYU amended its existing severance pay policy to exclude employees who lost their jobs when an affiliation contract terminated but obtained employment with the successor contractor within 30 days of the successor contract's effective date. Finding themselves seemingly ineligible for severance benefits, plaintiffs filed the instant case, which alleges violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.*, as well as various state law causes of action.

Before the Court is NYU's motion to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. Because matters outside the complaint have been submitted, I will treat the motion as a motion for summary judgment. For the reasons set forth below, the motion is granted and the complaint is dismissed.

## BACKGROUND

**A. Facts**

Construed in the light most favorable to plaintiffs, the facts are as follows:

For a number of years prior to 1997, NYU provided medical services at Goldwater Hospital pursuant to an affiliation agreement with HHC. During this time, NYU employed plaintiffs as physicians at Goldwater Hospital. On or about May 15, 1997, NYU learned that its affiliation agreement with HHC would not be re-

Philip F. Alba, P.C., By: Rita Aniano, West Islip, New York, for Plaintiff.

S. Andrew Schaffer, By: Ada Meloy, New York, New York, for Defendant.

### MEMORANDUM DECISION

CHIN, District Judge.

Pursuant to an affiliation agreement with the New York City Health and Hospitals Corporation ("HHC"), defendant New

newed and that HHC had agreed to enter into an affiliation agreement with Roosevelt to provide services at Goldwater. (Compl.¶ 14). As a result of losing the affiliation agreement, NYU terminated plaintiffs' employment on June 30, 1997. (*Id.* ¶¶ 17, 68). The next day, July 1, 1997, plaintiffs began working for Roosevelt at Goldwater Hospital in the same positions they had held before. (Affirmation of Rita Aniano ("Aniano Aff."), ¶ 11).

NYU's policy regarding severance benefits is set forth in its "Human Resources Policies and Procedures" manual (the "Manual"), which includes a proviso that the "policies and statements contained in this book ... are not a contract of any kind [and] may be changed or rescinded." [1] (Def. Notice of Mot., Ex. B at 1). Under the policy described in the Manual (the "Severance Plan"), NYU had, for more than twenty years prior to 1997, provided severance pay to eligible employees permanently laid off due to lack of funds or lack of work. (Compl.¶ 9). The Severance Plan listed six scenarios in which employees would not be entitled to severance pay, including, *inter alia*, voluntary resignation, discharge, and temporary layoff. (*Id.* ¶ 87).

On or about May 15, 1997, NYU modified the Severance Plan to include a seventh scenario in which employees would not be eligible for severance pay (the "Modified Severance Plan"). (*Id.* ¶ 88). The Modified Severance Plan provides, in relevant part:

> Employees are not entitled to severance pay in the following cases: ... Separation due to the termination of an affiliation contract when such separated employees are hired by the successor contractor within 30 days of that contract's effective date.

1. The complaint makes reference to two versions of the Manual: the original version (undated) and the one incorporating the May 15, 1997 modifications to the Severance Plan. Defendant provides excerpts from two versions of the Manual: one dated 1991, and the

(*Id.* ¶ 88; Def. Notice of Mot., Ex. C at 10–4). On May 30, 1997, NYU issued a memorandum notifying its Goldwater Hospital staff that, due to the loss of the affiliation contract, they would be laid off no earlier than June 16, 1997. (Aniano Aff., Ex. 1). The memorandum did not mention the change in severance pay policy enacted on May 15. (*Id.*).

According to plaintiffs, HHC accepted a bid from Roosevelt to provide services at Goldwater Hospital in April 1997, but did not formally enter into an affiliation agreement until August 1999. (*Id.* ¶ 11). Therefore, plaintiffs contend, Roosevelt had not yet entered into an affiliation agreement with HHC at the time plaintiffs were hired. (*Id.* ¶ 13). The plaintiffs also maintain that NYU paid severance benefits to at least four "other employees similarly situated as plaintiffs." (*Id.* ¶ 6).

The complaint also alleges, without elaboration, that NYU wrongfully denied Augusta Alba, one of the plaintiffs, a retirement package offered to other physicians who retired from NYU. (Compl.¶ 95).

## B. *Prior Proceedings*

Plaintiffs originally brought an action in the New York State Supreme Court, New York County, alleging various state law claims in connection with the change in severance pay policy. NYU then moved to dismiss the state court action, and plaintiffs filed the instant federal case, which alleges (1) that plaintiffs are entitled to recover severance pay under the Plan pursuant to section 502 of ERISA, 29 U.S.C. § 1132(a)(1)(B); (2) that NYU has failed to discharge its fiduciary duties with respect to the Plan, in violation of section 404 of ERISA, 29 U.S.C. § 1104(a)(1); and (3) eight state law causes of action. Justice Martin Schoenfeld, of the New York State

other dated 1997 (which contains the aforementioned modifications). Because there is no indication otherwise, the Court assumes that the original Manual referred to in the complaint is the 1991 version of the Manual.

Supreme Court, stayed the state action and denied NYU's motion to dismiss without prejudice to renewal if the state action resumed.

NYU subsequently moved to dismiss the federal complaint, on the grounds that (1) plaintiffs fail to state a claim under ERISA; (2) the state law claims are preempted by ERISA; (3) plaintiffs have failed to state claims under state law; and (4) if the state law claims are not dismissed on their merits, the Court should decline to exercise supplemental jurisdiction over the state law claims.

In opposing the motion, plaintiffs have provided the Court with materials outside the complaint.[2] Because I have considered those materials, I must convert plaintiffs' motion to dismiss to a motion for summary judgment.[3] *See Kreiss v. McCown DeLeeuw & Co.*, 37 F.Supp.2d 294, 298 n. 3 (S.D.N.Y.1999) (citing *Fonte v. Bd. of Managers of Continental Towers Condo.*, 848 F.2d 24, 25 (2d Cir.1988), and Fed. R.Civ.P. 12(b)).

## DISCUSSION

### A. *Applicable Law*

#### 1. *Summary Judgment*

The standards governing motions for summary judgment are well-settled. A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. *See* Fed R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To create an issue for trial, there must be sufficient evidence in the record to support a jury verdict in the nonmoving party's favor. *See id.*

To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. As the Supreme Court stated in *Anderson*, "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted). The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *National Union Fire Ins. Co. v. Deloach*, 708 F.Supp. 1371, 1379 (S.D.N.Y.1989) (quoting *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984) (internal quotation marks omitted)).

#### 2. *ERISA*

Plaintiffs rely upon two sections of ERISA in their complaint, section 502(a)(1)(b), 29 U.S.C. § 1132(a)(1)(B), and section 404(a)(1), 29 U.S.C. § 1104(a)(1).

---

2. Plaintiffs have submitted the affirmation of Rita Aniano in opposition to the motion to dismiss. Although NYU has submitted copies of the NYU Medical Center Human Resources Policies and Procedures Manual effective 1991 and dated May 15, 1997, these documents are referenced in the complaint and thus are not extrinsic material. (Compl.¶¶ 4, 15).

3. When a court considers whether to convert a motion to dismiss to a motion for summary judgment, "the relevant inquiry is whether the non-movant . . . was taken by surprise and

deprived of a reasonable opportunity to meet facts outside the pleadings." *Mate v. New York State Dep't of Labor*, No. 98 Civ. 1266(MBM), 1998 WL 770554, 1998 U.S. Dist. LEXIS 17197, at *2–3, (S.D.N.Y. Nov. 2, 1998) (internal quotation marks omitted) (quoting *Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 689 (2d Cir.1990)). In this case, plaintiffs—the non-movants—submitted materials outside the pleadings. Thus, plaintiffs were not taken by surprise or deprived of an opportunity to present facts outside the pleadings.

■ The first of these provisions, section 502(a)(1)(B), permits a participant or beneficiary of an employee benefit plan to bring a civil action to recover benefits due under the terms of the plan. *See* 29 U.S.C. § 1132(a)(1)(B); *Smith v. Dunham–Bush, Inc.*, 959 F.2d 6, 10 (2d Cir. 1992). Within the context of ERISA, the term "employee benefit plan" refers to both employee pension plans and employee welfare benefit plans. *See* 29 U.S.C. § 1002(3). An unfunded severance plan is an employee welfare benefit plan within the meaning of ERISA. *See Reichelt v. Emhart Corp.*, 921 F.2d 425, 430 (2d Cir. 1990), *cert. denied,* 501 U.S. 1231, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991).

■ In contrast to the stringent requirements it applies to pension plans, ERISA affords employers "considerable flexibility with respect to welfare plans." *Id.* at 429. Because an employee's interest in a welfare benefit plan is not vested, an employer may amend or terminate a severance pay plan at any time. *See id.* at 430; *Walsh v. Northrop Grumman Corp.*, 871 F.Supp. 1567, 1573 (E.D.N.Y.1994). As the Second Circuit has held, an employer's freedom to alter a severance pay plan extends to situations in which the employer's business is sold as a going concern and employees obtain positions with the successor company. *See Reichelt*, 921 F.2d at 430; *Veilleux v. Atochem North America, Inc.*, 929 F.2d 74, 76 (2d Cir.1991); *Ackner v. Lenox, Inc.*, 782 F.Supp. 267, 269 (S.D.N.Y.1992).

Section 502 of ERISA also permits a participant or beneficiary to sue for breach of fiduciary duty in violation of section 409, which provides as follows:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach[.]

29 U.S.C. § 1109(a). Among the fiduciary obligations established by ERISA is the duty of care set forth in section 404: "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and [ ] for the exclusive purpose of [ ] providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104.

■ The Supreme Court has held that the fiduciary duties imposed by ERISA inure to the plan itself and not to individual beneficiaries. *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140–42, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). In *Lee v. Burkhart*, the Second Circuit construed *Russell* as barring individual beneficiaries from seeking damages under section 502 on their own behalf, rather than on behalf of their plan. *See Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir.1993). Accordingly, a beneficiary suing in his or her individual capacity lacks standing to seek damages for breach of fiduciary duty under ERISA. *See Jaffe v. Int'l Bhd. of Teamsters Local 282 Welfare, Pension & Annuity Trust Funds*, No. 97 CV 934(SJ), 1999 WL 409395, 1999 U.S. Dist. LEXIS 21637, at *9 (E.D.N.Y. Jun. 16, 1999) ("Under § 502(a)(2), monetary relief is not available for individual plaintiffs and may be sought only on behalf of an ERISA benefit plan."); *Tabasko v. Direct Communs. Group*, No. 90 Civ. 7954(DC), 1996 U.S. Dist. LEXIS 2503, at *4–5 (S.D.N.Y. Feb. 28, 1996).

### 2. *Application*

#### a. *The First Cause of Action*

In their first cause of action, plaintiffs seek, pursuant to 29 U.S.C. § 1132(a)(1)(B), to enforce their rights to receive severance benefits under the Severance Plan. NYU argues in response that plaintiffs have failed to state a claim under ERISA, because NYU was entitled to amend the Severance Plan at any time.

■ The parties do not dispute that the Severance Plan is an "employee welfare

benefit plan" under ERISA.[4] The first issue to consider is whether NYU was authorized to amend the Severance Plan to exclude employees in plaintiffs' situation from receiving severance benefits. The answer to this question is clear: under the Second Circuit's holding in *Reichelt*, NYU was free to alter the Severance Plan at any time.

Plaintiffs attempt to distinguish the instant case from *Reichelt* by pointing out that Goldwater was not sold to Roosevelt "as a going concern." (Pl. Mem. of Law at 3–4). This is true: NYU did not enter into any transaction with Roosevelt. Rather, HHC terminated its affiliation contract with NYU and entered into a new affiliation contract with Roosevelt. This distinction, however, is not meaningful. The *Reichelt* decision did not rest on the relationship between plaintiffs' former and current employer, but on the absolute right of an employer to alter a severance pay plan. *See Reichelt*, 921 F.2d at 430 ("Since an employer has the right under ERISA to amend or eliminate a severance benefit plan *at any time, a fortiorari* it may do so in the context of the sale of a part of its business as a going concern.") (emphasis added). Moreover, the plaintiffs in this case experienced the same continuity of employment as the plaintiffs in *Reichelt. See id.* at 427. Neither group of employees missed a day of work; though their employers changed, their jobs did not. Because I find that *Reichelt* is controlling, NYU therefore had the authority to modify the Plan.[5]

Plaintiffs apparently do not allege that, in enacting the modification, NYU failed to comply with the ERISA requirements governing plan amendment or disclosure.[6] Instead, they contend that (1) there is an issue of fact as to plaintiffs' eligibility to receive severance benefits under the modified Plan; and (2) it was an abuse of NYU's discretion to exclude plaintiffs from receiving severance benefits. Both of these arguments are without merit.

The Modified Severance Plan provides that, in instances where NYU loses its affiliation contract, "separated employees . . . hired by the successor contractor within 30 days of that contract's effective date" shall be ineligible for severance pay. (Compl. ¶ 88). There is no dispute that plaintiffs began working for Roosevelt on July 1, 1997—the day after they were laid off by NYU. (Comp. ¶ 68; Aniano Aff. ¶ 11). Plaintiffs argue, however, that there is an issue of fact as to the operative date of eligibility for severance pay. According to plaintiffs, although HHC accepted a bid from Roosevelt for the affiliation agreement in April 1997, and assumed control of Goldwater on July 1, 1997, Roosevelt and HHC did not formally enter into an affiliation agreement until August 1999. Consequently, plaintiffs argue, the exclusion does not apply to them, for they were not hired by Roosevelt within 30 days of what they claim is the "effective date" of the affiliation contract—that is, July 1999. This position is unpersuasive.

No reasonable jury could find that the "effective date" of the Roosevelt–HHC affiliation contract was July 1999. Roosevelt took over Goldwater on July 1,

---

4. *See* Def. Mem. of Law in Support of Mot. to Dismiss, at 10–11; Compl. ¶ 23.

5. An employer may promise to vest severance benefits; however, there is no indication that NYU ever made such a promise with respect to the severance benefits here. *See Schonholz v. Long Island Jewish Medical Ctr.*, 87 F.3d 72, 77 (2d Cir.), *cert. denied*, 519 U.S. 1008, 117 S.Ct. 511, 136 L.Ed.2d 401 (1996). Indeed, the Manual explicitly disclaims such a promise. *See* Def. Notice of Mot., Ex. B at 1 ("[T]he policies and statements contained in

this book, and in other statements that may be issued from time to time[,] are not a contract of any kind. Although they generally reflect current policy, they may be changed or rescinded.").

6. Although the complaint alleges on several occasions that NYU modified the Severance Plan "without notice . . . to its employees," *see* Compl. ¶¶ 15, 68, 88, it does not allege that NYU violated the requirements set forth in 29 U.S.C. §§ 1024 or 1102(b)(3).

1997. Even if no formal contract was executed at that time, there was a contract, albeit an oral or informal one, between HHC and Roosevelt that took effect the moment NYU's contract expired and Roosevelt assumed control of Goldwater Hospital. Given these circumstances, it would make no sense to consider July 1999 the "effective date" of the contract for the purposes of calculating employees' eligibility for severance pay. Accordingly, there is no genuine issue of material fact for the jury to determine.

■ Plaintiffs' final contention is that NYU wrongfully discriminated among its employees when it excluded employees who accepted employment with Roosevelt from receiving severance pay.[7] The contention is rejected. As defendant notes, termination of a severance plan is particularly appropriate where, as here, a successor company "retains the former [employer's] employees, [because] it would give a windfall to award severance pay to employees who never changed their jobs and were never out of work." *Bradwell v. GAF Corp.*, 954 F.2d 798, 801 (2d Cir.1992) (citing *Reichelt*, 921 F.2d at 430). NYU acted reasonably in modifying the Severance Plan to exclude plaintiffs from eligibility.

Plaintiffs' discrimination argument must also be rejected as a matter of law because plaintiffs were not "similarly situated" to employees who found jobs with employers other than Roosevelt, even if those employees began work for the other employers one day after being terminated by NYU. Put simply, employees who took positions elsewhere changed their jobs. Plaintiffs did not. These two groups were not "similarly situated."

Finally, plaintiffs cite no legal authority for their "discrimination" argument. NYU may well have, as plaintiffs contend, awarded benefits to employees who obtained immediate employment from a non-successor company—this does not, however, invalidate the employer's choice. "ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Accordingly, plaintiffs' argument must be rejected. Defendant's motion is granted as to the first ERISA cause of action.

### b. *The Second Cause of Action*

In their second cause of action, plaintiffs seek to recover for NYU's alleged breach of fiduciary duty under section 404 of ERISA, 29 U.S.C. § 1104(a)(1). This claim must also be dismissed.

■ Plaintiffs do not purport to bring the action for breach of fiduciary duty on behalf of the Plan. Indeed, the complaint alleges that "by reason of [defendant's breach of fiduciary duty] ... plaintiffs are entitled to recover on their claims for severance pay." (Compl.¶28). This language makes it clear that plaintiffs are suing for their individual benefit. Nor is there any dispute that plaintiffs are seeking monetary damages.[8] Accordingly, plaintiffs lack standing to bring their second ERISA claim. Defendants' motion is granted as to plaintiffs' second ERISA cause of action, and the claim is dismissed. *See Brunoli v. Fred Brunoli & Sons, Inc. Pension Plan*, 993 F.Supp. 66, 74 (D.Conn.1997) (granting summary judgment in favor of

---

7. Plaintiffs are unclear as to the applicable standard of review. Despite their assertion that the Court should review NYU's decision *de novo*, plaintiffs go on to argue that it was an abuse of NYU's discretion to unilaterally change the severance pay policy for only these 17 employees (plaintiffs). (*See* Pl. Mem. at 5–8). In any event, I will give plaintiffs the benefit of the doubt as I will apply a *de novo* standard.

8. Although the second cause of action does not include the words "damages" or "monetary relief," the complaint alleges that "by reason of [defendant's breach of fiduciary duty] ... plaintiffs are entitled to recover on their claims for severance pay." (Compl.¶28). Because the cause of action explicitly refers to the (obviously monetary) claim for severance pay, I construe it as a claim for damages.

defendants where plaintiff asserted a claim for breach of fiduciary duty under ERISA and sought individual damages).

#### c. *State Law Claims*

In addition to the two ERISA claims, plaintiffs allege eight state law causes of action.[9] When, as here, the federal claims in a case are dismissed, leaving only state law claims, it is within the discretion of the district court to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Purgess v. Sharrock,* 33 F.3d 134, 138–39 (2d Cir.1994). I decline to do so here. Plaintiffs have already filed a state court action that has been stayed pending the outcome of the instant case. Although defendants have previously moved in the state action to dismiss the state law claims, ·the motion was denied without prejudice to renewal if the state court action resumed. (Def. Notice of Mot., Ex. E at 6). Given this opportunity to litigate the claims in state court, I decline to exercise supplemental jurisdiction.[10]

### *CONCLUSION*

For the foregoing reasons, defendant's motion to dismiss is denied, and the complaint is dismissed with prejudice as to the ERISA claims and without prejudice as to the state law claims, but without costs and attorneys' fees. The Clerk of the Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

---

**9.** The tenth cause of action is brought on behalf of plaintiff Augusta S. Alba, who alleges that NYU "wrongfully denied [her] a retirement package offered to other physicians who retired from [NYU]." (Compl.¶ 95). Although the claim refers to a "retirement package," Alba does not invoke ERISA or any other federal statute. I therefore · assume she is attempting to assert a state law claim.

**10.** Likewise, I decline to reach NYU's argument that the state law claims are preempted by ERISA. Although plaintiffs have apparently "concede[d] generally that ERISA preempts their state law claims" in the state court action, it is unclear whether it does so with respect to all nine claims. (Def. Notice of Mot., Ex. E at 4). Presumably, if plaintiffs choose to pursue their state court action, they will voluntarily discontinue those claims that they agree are preempted.