

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-15-1995

# Ackerman v Warnaco Inc

Precedential or Non-Precedential:

Docket 94-3527

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Ackerman v Warnaco Inc" (1995). *1995 Decisions.* Paper 132.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/132

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-3527


VALERIE J. ACKERMAN, Chester O. Adams, Anne E. Alexander,
Barry M. Allmond, Helen L. Anders, Marlene Archey, Mary H. Auker,
Frances C. Balestino, Pauline Balestino, Thomas L. Ballos,
Barney W. Barndollar, Elaine Barnes, Bertha L. Barnhill,
James E. Becker, Linda Becker, Mark A. Becker, Katherine L. Bem,
William F. Black, Diane Blanchard, Timothy Bowser, Barbara
Brocious, Janette C. Buzzella, Daniel R. Campbell, Barbara C.
Carney, David Castle, Paul M. Clack, Ronald Clapper, Darlene R.
Clark, Joyce Ann Conrad, Karen Joy Consalvo, Evelyn Conte, Carol
J. Corbin, Anna M. Costlow, Helen Creamer, Amporn Y. Cuff,
Shirley Cunningham, Hilda D'Amata, Melissa K. Daugherty, Judith
G. Davis, Twila Davis, Mary Louise Dawson, Walter E. Dempsie,
Deborah L. Deyarmin, Gary L. Dick, Phyllis I. DiTosti,
Charlotte Dixon, Deborah G. Dugan, Thomas Edmiston, Gordon M.
Ellis, Helen Erickson, Helen F. Fanelli, Paul Ferguson, Renee
Figait, Elizabeth C. Fleck, Gary P. Frederick, Roberta J. Frew,
David G. Frey, Rupert Friedenberger, Shirley A. Fudalski,
Derwin D. Gilbert, Jr., Brenda Greenleaf, Ida Gristina,
Steve Gristina, Gilda M. Hammer, Patricia Hartzell, Barbara
D. Helsel, Leslie E. Hildebrand, Karen S. Holmberg, Anita F.
Hoover, Lucy Horton, Joan B. Ickes, Penelope Ickes, Shirley Ann
Ickes, Glenna D. James, Sue Ellen Jensen, Diane Kelley, Soonja
Kelly, Alice Lawrence, William H. Leedy, Dale E. Lenning,
Agnes E. Lidwell, William S. Luther, Virginia Lynam, Mary L.
Maidl, June Martino, Dawn M. Masic, Doris H. Massaro, Eugene A.
Massaro, Kathy L. Mast, John L. McClosky, James F. McDermitt,
Jr., Donald E. McMasters, Francis R. Mentzer, Howard S. Mentzer,
Terrance Mentzer, Donnis Miller, Richard Miller, Ruth A. Miller,
James W. Morning, Donald M. Myers, Shirley Louise Myers, Jack E.
Neely, Scott E. Neely, Denise K. Neil, Wesley C. Noye, II,
Shirley L. Nyiri, Sean M. O'Connor, Mark E. Oswald, Jane Ozio,
Elsie K. Parsons, Joan L. Patterson, Sheryl A. Patterson, Dansie
Pearson-Lightner, Shirley J. Pero, Walter M. Phillips,
Marjorie Grace Pierce, Diana M. Prosser, Eugene Quarry, Santina
Radazzo, Mark A. Reagan, Bonnie Jean Rhodes, Donna E. Rhodes,
Thomas Leo Rhodes, Jr., Gerald P. Richards, Harry W.
Rickabaugh, Gary Lee Roudabush, Mary F. Russo, Steven Sager,
Pamela M. Sarvis, Kenneth Showalter, Jr., Minnie Showalter,
Sandra L. Showalter, Susan K. Showalter, Mary J. Sill,
George Simpson, Barry L. Siters, Rose Marie Skipper,
E. Kirby Smeigh, Joann Smith, Robert W. Snowberger,

Theresa Snowberger, Joseph C. Snyder, Teresa Soldenwagner, John Stevens, Dawn Sturgill, Carol Sumner, Kathleen A. Sweitzer, Richard M. Sweitzer, Judith L. Swires, John L. Taylor, William M. Taylor, Lester R. Thompson, Sharon Thompson, Mary Ann Trexler, Steven J. Vasas, Dolores G. Verbonitz, Katherine Waite, Barbara F. Walter, Robert E. Walter, Scott A. Walter, Michael E. Weaver, Veda S. Wertz, Richard M. Weston, Kay Weyandt, Jay Wible, Donald A. Wolfe, Janet R. Wolfe, Diane J. Woomer and Margaret Yantim

Appellants

v.

WARNACO, INC.

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 93-cv-0-00101J)

Argued March 28, 1995

BEFORE:  Mansmann, Cowen and Lewis
Circuit Judges

(Filed May 15, 1995)

James P. Hollihan (Argued)
Manion, McDonough & Lucas
600 Grant Street
Suite 882
Pittsburgh, PA  15219

    Counsel for Appellants

George E. Preonas (Argued)
Seyfarth, Shaw, Fairweather & Geraldson
2029 Century Park East
Suite 3300
Los Angeles, CA  90067

    Counsel for Appellee

**OPINION**

Cowen, Circuit Judge:

Plaintiffs, 169 former employees of defendant Warnaco, Inc. ("Warnaco"), appeal from an order of the district court that granted summary judgment in favor of Warnaco and denied plaintiffs' cross-motion for partial summary judgment as to liability on plaintiffs' claims for termination benefits pursuant to an employee benefit plan. Plaintiffs claim on appeal that the district court erred by concluding that a complete rescission of a welfare plan does not implicate the amendment procedures required by section 402(b)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1102(b)(3). Because we conclude that a complete rescission of a benefit plan does implicate the requirements of section 402(b)(3), we will reverse the order of the district court and provide certain directions upon remand.

Plaintiffs also assert on appeal that the district court erred by: (1) failing to void a change to Warnaco's employee benefits plan that eliminated the plan's termination allowance policy where the plaintiffs did not receive adequate notice of this change; and (2) concluding that no genuine issue of material fact existed as to whether Warnaco intentionally misled the plaintiffs by not timely disclosing the elimination of the

termination allowance policy.  Subsequent to the district court's decision in this matter, and while this appeal was pending, the Supreme Court decided the case of Curtiss-Wright Corp. v. Schoonejongen, ___ U.S. ___, 115 S. Ct. 1223 (1995).  In light of the Supreme Court's decision in that case, and because we conclude that there are genuine issues of material fact in dispute, we will remand this matter to the district court for further findings of fact.

I.

Plaintiffs worked in production positions at Warnaco's Altoona, Pennsylvania plant, where Warnaco manufactured various types of fashion apparel.  In January of 1988, Warnaco published an "Employee Handbook" (the "1988 Handbook") and distributed it to all of its employees, including the plaintiffs.  The 1988 Handbook described the company's termination allowance policy as follows:

> Warnaco hopes that economic circumstances never makes [sic] it necessary to eliminate any jobs within the Company. Should this unfortunate circumstance occur, however, you may be eligible for a termination allowance.  For example, you may be eligible if Warnaco eliminated your job to achieve long-term savings to the Company.  A condition of eligibility is that the employee sign an agreement to release Warnaco from liability for employment-related matters.
> In some cases, loss of employment will not make you eligible for a termination allowance.  For example, you will not be entitled to an allowance if termination of your employment occurs as a result of death, retirement, resignation, or discharge for misconduct or poor performance.  Entitlement to a termination allowance may also be affected if you receive any other termination or disability pay.  Furthermore, you will not be entitled to a

termination allowance if, at or about the time of termination of your employment with Warnaco Inc., you are offered employment with Warnaco Inc. or any affiliate or subsidiary of Warnaco Inc., or any purchaser of Warnaco assets, at a salary not substantially less than your last current salary at Warnaco Inc. <u>You will also not be entitled to a termination allowance if, prior to termination of your employment, management has altered or rescinded this termination allowance policy.</u>

    Eligible employees are entitled to receive a termination allowance of one week pay for each completed year of service, with a minimum of termination allowance of two weeks.

App. 116a-17a (emphasis added).

In a memorandum dated December 26, 1990, Stanley Silverstein, the Secretary and Assistant General Counsel of Warnaco, stated that, "effective immediately, the Termination Allowance Policy referred to in the Warnaco Employee Handbook, has been rescinded. Employees separated from the employment of Warnaco on and after December 19, 1990 will not be eligible for any termination allowance." App. at 120a. This memorandum also directed that meetings be scheduled to communicate this change to all employees. <u>Id.</u>

Plaintiffs contend that while one of Warnaco's vice presidents met with employees at the Duncanville, Pennsylvania warehouse and advised them of the rescission of the termination allowance policy, no such meeting was ever held with employees at the Altoona plant. Further, plaintiff Francis Mentzer avers that Warnaco did not give written or oral notice that the termination allowance policy was being rescinded until a meeting was held on January 22, 1992 to discuss issues raised by the closing of the Altoona plant. At that meeting, plaintiffs assert, employees

questioned Warnaco Vice President Richard Mitchell as to whether they would be receiving the severance benefits provided for in the 1988 Handbook, and he informed them that no such benefits would be paid.

Warnaco claims, and plaintiffs do not dispute, that sometime in 1991, it published an updated Employee Handbook (the "1991 Handbook") reflecting the elimination of the termination allowance. Further, it is undisputed that Warnaco President and Chief Executive Officer Linda Wachner, by letter dated January 16, 1991, advised employees about unfavorable economic times, and stated, "it has been necessary for us to take certain measures to protect the 11,800 members of our Warnaco family. While such things as a salary freeze and changes in our severance policy are difficult, they represent the kind and quality of tapestry that we must weave to strengthen our company." App. at 155a (emphasis added). Plaintiff Mentzer acknowledges receipt of this letter, which he describes as "vague," and without reference to any rescission of the termination allowance policy.

No reference is made in the 1991 Handbook, or elsewhere in the record, to the procedure that was followed in eliminating the termination allowance or the precise date such action was accomplished. More important, while plaintiffs concede that Warnaco began distributing the 1991 Handbook to new employees at other locations in 1991, plaintiffs allege that no employees at the Altoona plant ever received a copy of this updated handbook. Warnaco failed to produce any evidence that it distributed the 1991 Handbook to employees at the Altoona plant.

Warnaco shut down its Altoona plant in early 1991, and terminated the plaintiff employees at different times from October 1991 through January 1992. In light of Warnaco's refusal to pay severance benefits, the plaintiffs filed suit against Warnaco in the United States District Court for the Western District of Pennsylvania alleging violations of ERISA and seeking the benefits due to them under the 1988 Handbook, interest, and attorney's fees. Warnaco moved for summary judgment and plaintiffs cross-moved for partial summary judgment as to the issue of liability. The district court granted summary judgment in favor of Warnaco and denied the plaintiffs' cross-motion. This appeal followed.

Plaintiffs relied heavily on our decision in Schoonejongen v. Curtiss-Wright Corporation, 18 F.3d 1034 (3d Cir. 1994), rev'd, ___ U.S. ___, 115 S. Ct. 1223 (1995) in presenting their appeal. Following the Supreme Court's decision in that matter, which reversed our prior panel decision, we ordered supplemental briefing on the question of the effect of the Schoonejongen case on the instant appeal. We recognize, of course, that the district court did not have the benefit of the Supreme Court's decision in Schoonejongen for purposes of its decision concerning the granting of summary judgment.

II.

The district court exercised jurisdiction in this matter pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

III.

The plaintiffs' first claim is that the district court erred by concluding that a complete rescission of a welfare plan does not implicate the amendment procedures required by section 402(b)(3) of ERISA. Plaintiffs assert that it is illogical to suggest that while changes to a benefit plan which reduce benefits must follow the procedure outlined in section 402(b)(3), changes that totally eliminate plan benefits do not require such a procedure. Further, plaintiffs assert that the district court misinterpreted dicta in Schoonejongen, 18 F.3d at 1040, in reaching its erroneous conclusion.

We exercise plenary review over the district court's rulings concerning statutory construction. United States v. Barel, 939 F.2d 26, 31 (3d Cir. 1991). Section 402(b)(3) of ERISA states that every employee benefit plan shall "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan." 29 U.S.C. § 1102(b)(3) (1988). Concededly, nothing in the language of this ERISA section indicates that an employee benefit plan must provide a procedure for terminating the plan. Nevertheless, as the district court recognized, it is anomalous to suggest that ERISA offers employees protection from mere changes in employee benefit plans, but does not afford protection against wholesale elimination of benefits. Ackerman v. Warnaco, No. 93-101J, slip. op. at 9 (W.D. Pa. August 8, 1994). Further, the view that termination is

categorically different from an amendment for purposes of 402(b)(3) is at odds with the tenor of a previous decision of our court where we stated that, "ERISA generally allows employers to amend or terminate welfare benefit plans at will so long as the procedure followed is consistent with the plan and the Act." Deibler v. United Food & Commercial Workers' Local Union 23, 973 F.2d 206, 210 (3d Cir. 1992) (emphasis added).  Accordingly, we agree with the plaintiffs that the requirements of section 402(b)(3) apply to plan terminations as well as plan amendments.[1]

Warnaco asserts, and the district court agreed, that language in our previous decision in Schoonejongen supports the view that a complete rescission of an employee benefit plan does not implicate the requirements of section 402(b)(3).  Warnaco and the district court point to a passage in that decision where we stated:

---

[1]  We are aware that the Court of Appeals for the Eleventh Circuit has taken a different view in a recent decision.  See Aldridge v. Lily-Tulip, Inc. Salary Retirement Plan Benefits Committee, 40 F.3d 1202, 1210 (11th Cir. 1994).  In that case, the court determined that the purpose of preventing unanticipated amendments from defeating employees' expectations of benefits are not achieved by applying section 402 to plan terminations.  Id. The court reasoned that the notice and procedural requirements specifically tailored for terminations under 29 U.S.C. § 1341 are sufficient to keep employees apprised of their benefits under the plan and to promote certainty with regard to plan terminations. Id.
  We are unpersuaded by this analysis.  We believe that an unanticipated termination of an employee benefit plan can have an even more devastating effect in defeating employees expectations of benefits than an unanticipated amendment.  In addition, we fail to see how 29 U.S.C. § 1341 ensures that employees will be apprised of a termination of their severance benefits.

> Alternatively, [the employer] suggests that we should sustain the November 1983 announcement as a termination of its entire welfare benefit plan and the institution of a new plan without benefits for the retirees of the Wood-Ridge plant. It points out that it reserved the right to terminate its plan as well as amend it and that § 402(b)(3)'s requirement of a plan provision specifying a process for amendments does not apply to plan terminations. Because [the employer] could have terminated its entire plan without implicating § 402(b)(3) and could then have instituted a new plan without benefits for the Wood-Ridge retirees, [the employer] insists that it should be held to have accomplished the same result in "one step rather than two." We are unpersuaded.

Schoonejongen, 18 F.3d at 1040-41 (emphasis added). According to Warnaco and the district court, this passage indicates that a complete rescission of a welfare benefit plan does not implicate the requirements of section 402(b)(3).

We are unpersuaded by such reasoning. As a preliminary matter, our decision in Schoonejongen has been reversed by the United States Supreme Court, albeit not on the precise issue discussed in this passage. Schoonejongen, ___ U.S. at ___, 115 S. Ct. at 1231 (reversing the prior decision of our Court). More important, however, in this passage we were merely describing an argument of the employer. We were not setting forth a rule of law or even providing persuasive dicta. Because it is improper to give precedential weight to a mere characterization of a party's argument, we find that Warnaco's argument lacks merit. Accordingly, we will reverse the order of the district court granting summary judgment in favor of Warnaco and remand for further proceedings consistent with this opinion.

On remand the district court must determine whether Warnaco complied with section 402(b)(3). We pause briefly to provide

certain directions.  The plaintiffs assert that Warnaco failed to comply with section 402(b)(3) because it failed to identify specifically the entity with the authority to alter plan benefits.  Warnaco counters that it expressly reserved the right of "the management" to alter or rescind the termination allowance policy, and that "the management" is sufficiently specific to comply with section 402(b)(3).

In our previous decision in Schoonejongen, we determined that designating "the Company" as the entity with authority to amend a benefits plan was not sufficiently specific to comply with section 402(b)(3).  Schoonejongen, 18 F.3d at 1039.  The Supreme Court granted certiorari on this precise issue, however, and determined that designating "the Company" as the entity with authority to alter the plan satisfied the requirements of section 402(b)(3).  Schoonejongen, ___ U.S. at ___, 115 S. Ct. at 1228-29.  The Court reasoned that designating "the Company" is sufficiently specific because principles of corporate law provide a ready-made set of rules for determining who has authority to make decisions on behalf of the company.  Id. at ___, 115 S. Ct. at 1229.  The Court also explained that the literal terms of section 402(b)(3) are ultimately indifferent to the level of detail in the identification procedure.  Id.  Although it is a close question, in light of the Supreme Court's decision, we conclude that designating "the management" as the entity with authority to alter the plan satisfies the requirements of section

402(b)(3).[2]  Accordingly, on remand the issue to be determined is whether Warnaco's valid amendment procedure was complied with in this case.  The answer will depend on a fact-intensive inquiry into whether Warnaco's management actually approved the new plan provision rescinding the termination allowance policy.

IV.

Plaintiffs next argue that even if the rescission to the termination allowance policy was properly adopted, the district court erred by failing to void this rescission where the plaintiffs' did not receive adequate notice of the change. Plaintiffs assert that each affected employee is entitled to written notice of such rescission.  According to plaintiffs, the 1991 Handbook evidencing the deletion of the termination allowance policy was not distributed at the Altoona plant at which they worked, and meetings were not held at the Altoona plant to advise the employees of this change.

Warnaco counters that ERISA does not require written notice to each affected employee.  Warnaco argues that meetings were held for most of Warnaco's 11,800 employees, and that one such meeting was conducted at the nearby Duncanville plant.  Warnaco also argues that the employees at the Altoona plant received a letter from Linda Wachner, Warnaco's CEO, explaining that the

---

[2].  The question is close because although designating "the management" as the body with authority to alter a plan in one sense is more specific than designating "the Company," companies act through well-recognized chains of corporate governance.  Who has authority to act on behalf of "the management" is less clear.

company was experiencing economic difficulties and referencing changes in the severance policy. Finally, Warnaco asserts that whether or not plaintiffs received notice of the termination allowance, their claim for benefits is barred because a procedural defect like defective notice does not give rise to a substantive remedy under ERISA.

The district court based its decision on Warnaco's final contention, that even if the plaintiffs did not receive notice, this procedural defect does not give rise to a substantive remedy. Relying on Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1170 (3d Cir. 1990) and Berger v. Edgewater Steel Co., 911 F.2d 911, 921 (3d Cir. 1990), cert. denied, 499 U.S. 920, 111 S. Ct. 1310 (1991), the court determined that the caselaw of this circuit teaches that substantive remedies are generally not available for such violations. Ackerman, No. 93-101J, slip. at 10. The court explained that while monetary relief is sometimes available in "exceptional cases" or if "extraordinary circumstances" are present, there was insufficient evidence of such circumstances in this case to warrant relief. Id. at 10-11.

In Schoonejongen, the Supreme Court described a number of ERISA's core requirements and goals. ___ U.S. at ___, 115 S. Ct. at 1230-31. As the Court recognized in that case, ERISA requires that "`[e]very employee benefit plan shall be established and maintained pursuant to a written instrument.'" Id. at 1230 (quoting 29 U.S.C. § 1102(a)(1)). Further, as the Court explained, a written instrument is required to enable employees to determine exactly what his or her rights are under the plan.

Id. (citing H.R. Conf. Rep. No. 1280, 93rd Cong., 2d Sess. 297 (1974), reprinted in 1974 U.S.C.C.A.N. 4639, 5077-78). Finally, as the Court noted, ERISA gives effect to the written plan scheme through a comprehensive set of reporting and disclosure requirements embodied in 29 U.S.C. §§ 1021-31. Id. Certain of these reporting and disclosure requirements are at issue in this case.

ERISA requires that if there is a modification or change in a summary plan description,[3] a summary of this modification or change must be furnished to each plan participant not later than 210 days after the end of the plan year in which the change is adopted. 29 U.S.C. § 1024(b)(1) (1988). In addition, and "[m]ore important," ERISA requires that every plan administrator make available for inspection in the administrator's "`principal office' and other designated locations," a set of currently operative governing plan documents, which "necessarily includes any new, bona fide amendments." Schoonejongen, ___ U.S. at ___, 115 S. Ct. at 1231 (citing 29 U.S.C. § 1024(b)(2)).[4]

---

[3]. A summary plan description contains information including the plan's requirements for eligibility for participation and benefits. 29 U.S.C. § 1022(b).

[4]. Section 1024(b)(2) provides:

> The administrator shall make copies of the plan description and the latest annual report and the bargaining agreement, trust agreement, contract, or other instruments under which the plan was established or is operated available for examination by any plan participant or beneficiary in the principal office of the administrator and in such other places as may be necessary to make available all pertinent information to all participants (including such places as the Secretary may prescribe by regulations).

Warnaco acknowledges that not all of its employees received notice of the rescission of the termination allowance policy within 210 days of the end of the plan year in which the change was adopted.[5] Warnaco, however, suggests that a copy of the amended handbook with the rescission of the termination allowance policy was on file in the principal office of the plan administrator. Unfortunately, Warnaco cannot point to convincing record support for its claim that the 1991 Handbook was on file in the plan administrator's principal office, and the plaintiffs assert that this is a disputed issue of material fact.[6]

(..continued)

29 U.S.C. § 1024(b)(2) (1988).

[5]. Once again, Warnaco argues that a termination of benefits is different from an amendment and is therefore not covered by the language of 29 U.S.C. § 1024(b)(1) which speaks of a plan "modification" or "change." We find this argument unpersuasive for the same reasons we found Warnaco's argument concerning section 402(b)(3) unpersuasive -- we do not believe Congress intended to protect employees from undisclosed plan amendments, but leave them defenseless with respect to a plan termination, a change with potentially more dramatic effects. We take no position, however, on whether the 210 day notice period sufficiently protects employees' rights. Indeed, at least one court has determined that 210 days after the end of the plan year in which the change has been adopted is too long a period for employees to wait to be notified of changes in their rights, and that "prompt" notice will be required. See Rucker v. Pacific FM, Inc., 806 F. Supp. 1453, 1459 (N.D. Cal. 1992).

[6]. Counsel for Warnaco states, in a supplemental brief filed with this Court, that his law firm has spoken with Denise Kelly, the personnel manager for the Knitwear Division of Warnaco, and she has confirmed that copies of the 1991 Handbook were on file in the Duncanville personnel office and available for review by all Altoona and Duncanville employees. As a preliminary matter, since Ms. Kelly's statements on this point are not part of the record before us, we cannot consider them. Even more fundamental, however, the district court made no findings

We have repeatedly held that under ordinary circumstances defects in fulfilling the reporting and disclosure requirements of ERISA do not give rise to a substantive remedy other than that provided for in section 502(a)(1)(A) of that Act.[7]  See Hozier, 908 F.2d at 1169-70 (declining to find an implied remedy for a violation of ERISA's reporting and disclosure requirements); Berger, 911 F.2d at 921 ("[T]his Circuit has apparently rejected the reasoning that substantive remedies, such as the severance pay the Employees seek on appeal, are available for violations of ERISA's procedural requirements."); see also Gridley v. Cleveland Pneumatic Co., 924 F.2d 1310, 1319 (3d Cir.) (declining to find a basis for equitable relief absent "extraordinary circumstances"), cert. denied, 501 U.S. 1232, 111 S. Ct. 2856 (1991).  Thus, even if as the result of Warnaco's negligence a copy of the 1991 Handbook was not available for plaintiffs' review in the principal office of the plan administrator, and the employees did not receive written notice of the termination of their severance benefits within 210 days of the end of the plan year in which this change was adopted, we are unable to conclude that ERISA

(..continued)
concerning whether Duncanville, or any other location, was the principal office of the plan administrator.

[7].  Section 502(a)(1)(A) of ERISA codified at 29 U.S.C. § 1132(a)(1)(A) states that any administrator who fails to provide information required to be disclosed under ERISA within 30 days after a request for such information is made may in the court's discretion be personally liable for an amount of up to $100 per day from the date of such failure or refusal to provide the information, and may be liable for such other relief as the court deems appropriate.  29 U.S.C. § 1132(a)(1)(A) (referencing § 1132(c).

provides the remedy that plaintiffs seek.  Plaintiffs are limited to their statutory remedies under such facts.

V.

The plaintiffs' final contention is that the district court erred in determining that no genuine issue of material fact existed as to whether Warnaco intentionally misled the plaintiffs by not timely disclosing the elimination of the termination allowance policy.  According to the plaintiffs, even though substantive remedies are generally not available for an employer's violation of ERISA's reporting and disclosure violations, the remedy of striking a plan amendment is available where an employer is guilty of bad faith or active concealment with respect to a substantive plan change.  The plaintiffs point to the fact that meetings that were scheduled to inform the plaintiffs of the change in policy were never held, the fact that the 1991 Handbook was never distributed to the Altoona employees, and the fact that a letter of January 16, 1991 from Warnaco's CEO spoke of "changes" in (rather than the elimination of) the severance plan, to support their view that Warnaco was actively concealing the elimination of the severance policy in order to induce workers to stay at their jobs.

As we discussed above, substantive remedies are generally not available for violations of ERISA's reporting and disclosure requirements.  See Hozier, 908 F.2d at 1169-70; Berger, 911 F.2d at 921.  We have, however, recognized the possibility of a remedy where the plaintiff can demonstrate the presence of

"extraordinary circumstances." See Gridley, 924 F.2d at 1319. Such circumstances include situations where the employer has acted in bad faith, or has actively concealed a change in the benefit plan, and the covered employees have been substantively harmed by virtue of the employer's actions. See Berger, 911 F.2d at 920-21; Blau v. Del Monte Corp., 748 F.2d 1348, 1353-54 (9th Cir. 1984), cert. denied, 474 U.S. 865, 106 S. Ct. 183 (1985). Further, we have acknowledged that reporting and disclosure violations can "wreak especially substantial harm" in the context of a dispute over the validity of a plan alteration. Hozier, 908 F.2d at 1168-69 n.15. The district court concluded that the record contains "no evidence of the narrow `extraordinary circumstances,' which must be present for substantive relief to be available." Ackerman, 93-101J, slip op. at 11. We disagree.

At oral argument, Warnaco described its failure to distribute the 1991 Handbook to affected employees at the Altoona plant, its failure to hold scheduled meetings with Altoona employees, and its issuance of a letter concerning "changes" in the severance policy, as mere bureaucratic "bungling." While we do not rule out the possibility that administrative error accounted for Warnaco's omissions, we conclude that a reasonable fact finder could infer from these facts and from the plaintiffs' evidence regarding the employment climate at the Altoona plant that Warnaco actively concealed the change to its severance policy in order to prevent employees at the Altoona plant from leaving. Under such circumstances, we conclude that it would be inappropriate to deprive the plaintiffs of the remedy of voiding

Warnaco's rescission of the termination allowance policy.[8]
Accordingly, we will reverse the district court's grant of
summary judgment in favor of Warnaco, and remand for further
findings on this disputed factual issue.[9]

CONCLUSION

---

[8]. We find support for the remedy of voiding a rescission of an
employee benefits plan in a portion of our previous decision in
Schoonejongen that was not expressly reversed on appeal to the
Supreme Court.  In that case, we explained that where we are
asked to void a plan amendment we are in a situation "[u]nlike
the situation in Hozier where the plaintiffs sought benefits not
provided for in the plan."  Schoonejongen, 18 F.3d at 1040.
Further, in Hozier, we implicitly recognized the possibility of
striking down a plan amendment where there has been a reporting
and disclosure violation concerning the amendment.  Hozier, 908
F.2d at 1168-69 n.15.  We conclude that such a remedy is
appropriate in situations of active concealment.
      We point out that an inference of bad faith or active
concealment does not arise simply from a failure to comply with
ERISA's reporting or disclosure requirements.  It is the peculiar
combination of Warnaco's alleged deficiencies in this case that
raises a material issue of fact necessitating a remand.

[9]. Warnaco also asserts that our decision in Hamilton v. Air
Jamaica, Ltd., 945 F.2d 74 (3d Cir. 1991), cert. denied, 503 U.S.
938, 112 S. Ct. 1479 (1992), precludes recovery for a violation
of a notice requirement, even in situations of active
concealment, where an employee handbook contains an express
reservation clause.  According to Warnaco, where a plan document
expressly reserves the right to alter or eliminate benefits, no
additional notice to the beneficiaries is required to eliminate
benefits.
      As a preliminary matter, we note that in Air Jamaica, the
employee handbook at issue expressly reserved the right to alter
or eliminate benefits "without notice," id. at 76, a provision
not contained in the description of Warnaco's termination
allowance policy.  More fundamentally, however, we refuse to read
Air Jamaica so broadly.  We did not intend in Air Jamaica to
allow employers to absolve themselves of good faith compliance
with their ERISA reporting and disclosure requirements simply by
placing a reservation clause in their employee handbooks.

Because we find that a complete rescission of a benefit plan does implicate the requirements of section 402(b)(3) of ERISA, we will reverse the order of the district court.  Upon remand the district court must determine whether Warnaco complied with its otherwise valid procedure for altering plan benefits.  With respect to Warnaco's alleged reporting and disclosure violations, we will reverse and remand this case for a determination as to whether Warnaco acted in bad faith, or actively concealed the rescission of the termination allowance policy.